IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| NATIONAL LIABILITY & FIRE INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-cv-02598-KHV-GEB |
| | ) | |
| KRUCIAL STAFFING, LLC, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BRIAN MICHAEL CLEARY V, | ) | |
| | ) | |
| Defendants. | ) | |
| -------------------------------------------------- | ) | |
| KRUCIAL STAFFING, LLC, | ) | |
| | ) | |
| Counter-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NATIONAL LIABILITY & FIRE INSURANCE COMPANY, | ) | |
| | ) | |
| Counter-Defendant. | ) | |
| -------------------------------------------------- | ) | |

**REPLY MEMORANDUM IN SUPPORT OF NATIONAL LIABILITY & FIRE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT ON ITS COUNT I**

**I.     NATURE OF THE MATTER BEFORE THE COURT**

National Liability & Fire Insurance Company ("NLF") seeks summary judgment that the NLF Policy does not provide coverage for the claims against Defendants Krucial Staffing, LLC ("Krucial") and Brian Cleary V ("Cleary") in the Underlying Suit.  In its opposition, Krucial's arguments for coverage are based entirely on: (1) claims that Underlying Plaintiffs are not pursuing in the Underlying Suit, and (2) language that appears nowhere in the NLF Policy.  Krucial's

arguments are untenable.  Coverage cannot be founded on non-existent claims or non-existent policy language.

First, NLF obviously has no duty to defend against claims not actually being pursued in the Underlying Suit.  Krucial cannot avoid the intentional-injury exclusion on the basis that Underlying Plaintiffs *might* raise a negligence or vicarious liability claim that *could* fall outside the exclusion.  This is especially true because Underlying Plaintiffs have made abundantly clear that they are specifically alleging *intentional* injury by Krucial itself—and nothing short of that— so as to avoid New York's workers compensation law.  Likewise, the NLF Policy's workers compensation coverage cannot be triggered by Krucial's belief that Underlying Plaintiffs' claims *should* have been brought as workers compensation claims.  Whether or not they should have made workers compensation claims, Krucial seeks coverage because Plaintiffs brought a civil action for contract and tort damages, not a proceeding for workers compensation benefits.

Second, this Court must apply the NLF Policy as the contract is written; it cannot add to or vary the Policy's language to alter an exclusion or broaden the scope of coverage.  Krucial cannot avoid the personnel-acts exclusion on the basis that Underlying Plaintiffs allege bodily-injury-by-disease damages.  *As written*, the exclusion turns simply on whether Underlying Plaintiffs allege their damages were caused by personnel practices or acts—which they do—not on the type of damages they allege.  And contrary to Krucial's arguments, the NLF Policy, *as written*, does not grant coverage for employee injury claims against Krucial in its capacity as employer or grant coverage for claims based on Krucial's work in New York when Krucial had other insurance for such work.

In short, the only way for this Court to find in Krucial's favor on coverage would be to rely on either claims that do not exist in the Underlying Suit, or on language that does not exist in the

NLF Policy.  The law does not allow for either course.  Properly considering only the claims actually being pursued in the Underlying Suit and only the language actually contained in the NLF Policy, as a matter of law there is no coverage for the claims in the Underlying Suit.

## II.   NLF'S RESPONSES TO KRUCIAL'S STATEMENT OF FACTS

Pursuant to Local Rule 56.1(c), NLF provides these responses to Krucial's statement of additional facts.  NLF does not controvert the alleged facts in Krucial's ¶¶ 38–41, 43, and 50–63, but notes that such alleged facts are superfluous and immaterial to this Motion for Summary Judgment because they are not "essential to the proper disposition of the claim" under the substantive law.  *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1173 (10th Cir. 2020).  NLF controverts Krucial's remaining alleged facts (¶¶ 42, 44–49) as follows:

42.  Controverted.  Krucial's ¶ 42 paraphrases, misstates, and is incomplete with respect to the terms of coverage for Part One of the NLF Policy.  (*See* Doc. 29-1, p. 32).

44.  Controverted.  Krucial's ¶ 44 paraphrases, misstates, and is incomplete with respect to the terms of coverage for Part One of the NLF Policy.  (*See* Doc. 29-1, p. 32).

45.  Controverted.  Krucial's ¶ 45 paraphrases, misstates, and is incomplete with respect to the terms of coverage for Part Two of the NLF Policy.  (*See* Doc. 29-1, p. 33).

46.  Controverted.  Krucial's ¶ 46 is incomplete with respect to the terms of coverage for Part Two of the NLF Policy.  (*See* Doc. 29-1, p. 33–34).

47.  Controverted.  Krucial's ¶ 47 paraphrases, misstates, and is incomplete with respect to the terms of coverage for Part Three of the NLF Policy.  (*See* Doc. 29-1, p. 35).

48.  Controverted.  Krucial's ¶ 48 is incomplete with respect to the terms of coverage for Part Three of the NLF Policy.  (*See* Doc. 29-1, p. 35).

49. Controverted.  Krucial had a type of employer liability coverage through an insurance policy with Federal Insurance Company, and such policy "shall apply anywhere in the world." (*See* Doc. 29-3, ¶¶ 23–40; Doc. 29-4, p. 16, 48).

## III.    QUESTIONS PRESENTED

NLF's Motion for Summary Judgment presents the following questions: (1) Is there coverage under the NLF Policy for the claims against Cleary in the Underlying Suit?; (2) Is there coverage under the NLF Policy's workers compensation insurance for the claims in the Underlying Suit?; and (3) Is there coverage under the NLF Policy's employers liability insurance for the claims in the Underlying Suit?  The answer to each question is "no."

## IV.    ARGUMENT

### A.  It is undisputed that there is no coverage under the NLF Policy for claims against Cleary.

In its opening Memorandum in Support of this Motion, NLF explained there was no coverage for any of the claims against Cleary in the Underlying Suit because Cleary is not an insured under the NLF Policy.  (Doc. 29, p. 10–11).  In response, Krucial filed a Memorandum in Opposition—signed by counsel representing both Krucial and Cleary—but made no argument that there is coverage for Cleary.  For his part, Cleary did not file a separate opposition.  The lack of coverage for Cleary is now undisputed, and NLF is entitled to summary judgment that it has no duty to defend or indemnify Cleary under the NLF Policy.

### B.  There is no coverage under the NLF Policy's workers compensation insurance.

NLF's opening Memorandum also explained there is no coverage under the NLF Policy's workers compensation insurance for the Underlying Suit because none of the claims seek workers compensation benefits.  (Doc. 29, p. 11).  In response, Krucial points to testimony from an Underlying Plaintiff indicating she pursued a workers compensation claim at some point, as well

as its own affirmative defense that argues workers compensation law is Underlying Plaintiffs' exclusive remedy.  Krucial, though, does not argue that any workers compensation claim actually has been brought in the Underlying Suit.  Indeed, none has.  (Doc. 29-2, ¶¶ 1–334).  Instead, Krucial appears to argue Underlying Plaintiffs' claims *should* have been brought as workers compensation claims, even though no such claims are pending, let alone sought for coverage.

It is well established that an insurer has no duty to defend against a civil action under workers compensation coverage, even if there is "an allegation that the suit should have been brought as a workers' compensation claim."  *Carolina Cas. Ins. Co. v. Pinnacol Assur.*, 425 F.3d 921, 929 (10th Cir. 2005).  "[T]he common understanding of workers' compensation insurance coverage . . . is that coverage is limited to claims within the worker's compensation administrative regime."  *Id.* at 930.  "Although the evidence produced in a [civil] case may indicate that the claim could have been brought as a workers' compensation claim, that evidence becomes relevant to coverage only if the claim is brought in the proper administrative tribunal."  *Id.*

The Underlying Suit is a civil action brought in federal court for contract and tort damages, not a proceeding brought in an administrative tribunal for workers compensation benefits.  (Doc. 29-2, ¶¶ 1–334).  It is irrelevant whether Underlying Plaintiffs' claims *should* have been brought as workers compensation claims because coverage depends only on the remedies Underlying Plaintiffs are actually pursuing.  *See Carolina Cas.*, 425 F.3d at 929–30.  Because Underlying Plaintiffs are pursuing civil remedies in the Underlying Suit, rather than workers compensation benefits in an administrative proceeding, NLF is entitled to summary judgment that it has no duty to defend or indemnify under the NLF Policy's workers compensation insurance.

### C.  There is no coverage under the NLF Policy's employers liability insurance.

NLF's opening Memorandum further explained there was no coverage under the NLF Policy's employers liability insurance for several separate and independent reasons, including: (1) coverage is barred by the intentional-injury exclusion; (2) coverage is barred by the personnel-acts exclusion; (3) no coverage is granted for employee injury claims brought against Krucial in its capacity as employer; and (4) no coverage is granted for claims based on Krucial's work in New York because Krucial had separate insurance for such work.  (Doc. 29, p. 11–17).

In response, Krucial attempts to avoid the intentional-acts exclusion by suggesting Underlying Plaintiffs *may* hypothetically bring negligence or vicarious liability claims.  The law is clear, though, that hypothetical claims have no bearing on coverage.  Equally unavailing is Krucial's attempt to avoid the personnel-acts exclusion by arguing the exclusion does not apply to bodily-injury-by-disease damages.  Plainly, the personnel-acts exclusion turns on the *cause* of damages alleged, not the type of damages alleged.  Krucial makes no argument that Underlying Plaintiffs' alleged causes of damages (personnel acts and practices) fall outside the exclusion. Krucial also asks this Court to find that the NLF Policy grants coverage for employee injury claims against Krucial in any capacity and grants coverage to Krucial for claims based on its work in New York.  But to find either grant of coverage, this Court would have to impermissibly rewrite the NLF Policy to add language that appears nowhere in its plain, written terms.

### 1.  Krucial cannot avoid the intentional-injury exclusion based on hypothetical claims that Underlying Plaintiffs are not pursuing.

"Where a petition alleges an act that is clearly not covered, for example, that the defendant acted willfully and intentionally, there would be no potential of liability under the policy for intentional acts."  *Spivey v. Safeco Ins. Co.*, 865 P.2d 182, 188 (Kan. 1993).  Thus, when a complaint alleges only intentional injury, and not negligent injury, an intentional-injury exclusion

will apply to bar coverage and relieve the insurer of any duty to defend because there is no potential for liability under the policy.  *Id.*

Such is the case here.  The NLF Policy's intentional-injury exclusion provides: "This insurance does not cover . . . Bodily injury intentionally caused or aggravated by [Krucial]."  (Doc. 29, p. 4; Doc. 29-1, p. 34).  The only potential bodily injury claim alleged by Underlying Plaintiffs is expressly premised on intentional injury committed by Krucial itself.[1]  (Doc. 29-2, ¶¶ 317–28).  Underlying Plaintiffs leave no doubt that they are alleging both (1) intentional acts; and (2) the requisite intent to injure[2] by Krucial itself, pleading: "***Krucial's intentional acts*** were extreme and the facts demonstrate that ***evil acts in derogation of the plaintiffs*** who contracted COVID were spun into action ***by Krucial***."  (*Id.* at ¶ 328) (emphasis added).

Krucial's only argument against application of the intentional-injury exclusion is that Underlying Plaintiffs ***might*** raise hypothetical claims for negligence or vicarious liability that ***could*** fall outside the exclusion.  These claims do not actually exist in the Underlying Suit.  Krucial even acknowledges no such claims have been pleaded.  (Doc. 32, p. 2, 25).  In fact, Underlying Plaintiffs have purposefully avoided pleading claims for negligence or vicarious liability—or anything else short of intentional injury by Krucial—because such claims would be barred by New York's workers compensation law.  *See McKay v. Ciani*, 720 N.Y.S.2d 601, 603 (N.Y. App. Div. 2001).  Underlying Plaintiffs expressly revealed this strategy, pleading:

---

[1] Only Count Eight for intentional tort alleges potential bodily injury ***caused*** by the conduct underlying the claim. (Doc. 29-2, ¶¶ 317–28). While Krucial suggests that other claims incorporate by reference allegations relating to bodily injury, none of the other claims allege any causal connection between bodily injury and the conduct underlying the claim, *e.g.,* there are no allegations that any breach of contract caused bodily injury. (*Id.* at ¶¶ 259–316, 329–34).
[2] "The insured must have intended both the act and to cause some kind of injury or damage." *Thomas v. Benchmark Ins. Co.*, 179 P.3d 421, 431 (Kan. 2008). "Intent to cause the injury or damage can be actual or it can be inferred from the nature of the act when the consequences are substantially certain to result from the act." *Id.*

326.   An intentional injury by the employer – or its employee – is an exception to the NY Worker's Compensation Law bar. Where an injury is sustained to an employee due to an intentional tort perpetrated by the employer or at the employer's direction, the Workmen's Compensation Law is not a bar to a common-law action for damages.

327.   To recover for his injuries under the intentional tort exception, the employee must establish that the employer that the acts of the employer constituting an intentional tort were deliberate.

(Doc. 29-2, ¶¶ 326, 327).

NLF has no duty to defend against hypothetical negligence or vicarious liability claims that Underlying Plaintiffs do not raise and, in fact, are deliberately avoiding. While "the duty to defend exists whenever there is a potential for liability, this duty is contingent upon the claims ***actually advanced in the underlying litigation***." *Collective Brands, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 11-4097-JTM, 2013 WL 66071, at *16 (D. Kan. Jan. 4, 2013) (emphasis added). There is "no authority for the principle that an insurer must offer a defense based on hypothetical claims which have been deliberately eschewed by the real world plaintiffs." *Id.*

Krucial, undoubtedly, would prefer that Underlying Plaintiffs pursue claims under alternative theories of either negligence or vicarious liability, rather than intentional tort. But that is not reality. For purposes of the intentional-injury exclusion, these alternative theories of liability are irrelevant when the injuries are alleged to be intentional. *State Farm Ins. Cos. v. Gerrity*, 968 P.2d 270, 272–73 (Kan. App. 1998). This Court must apply the intentional-injury exclusion based on the claims Underlying Plaintiffs are actually pursuing, not the claims Krucial would prefer they pursue. "[J]ust as we cannot allow insurers to recharacterize negligent conduct as intentional, we cannot allow the insured to recast intentional conduct as merely negligent." *Quality Painting, Inc. v. Truck Ins. Exch.*, 988 P.2d 749, 754 (Kan. App. 1999); *see also Notwen Corp. v. Am. Econ. Ins. Co.*, 206 Fed. App'x 811, 814–15 (10th Cir. 2006) (rejecting insureds' argument that the potential

for vicarious liability provided coverage for claims otherwise excluded as intentional torts because "no vicarious liability claim was asserted" in the underlying case).

Where only intentional injury is pleaded, Kansas law is unequivocal that the NLF Policy's intentional-injury exclusion bars coverage because there is "no potential of liability under the policy for intentional acts." *Spivey*, 865 P.2d at 188. For this reason alone, there is no coverage for the Underlying Suit under the NLF Policy's employers liability insurance.

### 2. The personnel-acts exclusion bars coverage based on _causes_ of damages, not types of damages.

In addition to the intentional-injury exclusion, the NLF Policy's personnel-acts exclusion independently bars coverage. The personnel-acts exclusion provides: "This insurance does not cover . . . Damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions." (Doc. 29, p. 4; Doc. 29-1, p. 34). Curiously, Krucial's argument against application of the personnel-acts exclusion is that "bodily injury by disease is not among the list of excluded damages." (Doc. 35, p. 20).

This argument is nonsensical. Courts cannot "make another contract for the parties; rather, it should enforce the contract as written." *Evergreen Recycle, L.L.C. v. Ind. Lumbermens Mut. Ins. Co.*, 350 P.3d 1091, 1118 (Kan. App. 2015). As written, the personnel-acts exclusion plainly does not list types of damages. Rather, the exclusion lists **causes of damages** and applies broadly to any "Damages"—including damages for bodily injury by disease—arising out of personnel-related practices, policies, acts, and omissions. *See LDF Food Grp., Inc v. Liberty Mut. Fire Ins. Co.*, 146 P.3d 1088, 1095 (Kan. App. 2006).[3]

---

[3] Further missing the mark, Krucial attempts to distinguish *LDF* on the basis that the employee's claims in *LDF* did not involve claims for bodily injury, but only emotional distress. This is a distinction without a difference. Again, application of the personnel-acts exclusion depends on the alleged cause, not the alleged damages. In *LDF*, the Kansas

Accordingly, the dispositive question for this exclusion is simply whether Underlying Plaintiffs allege their damages were caused by a personnel practice, policy, act, or omission.  As discussed in NLF's opening Memorandum in Support, Underlying Plaintiffs allege damages on each of their nine claims were caused, respectively, by Krucial's: (1) breach of an employment contract; (2) breach of a quasi-contract in connection with employment-related promises; (3) retaliatory employment actions; (4) breach of contract implied-in-law based on termination or forced resignation; (5) fraudulent misrepresentation of employment conditions; (6) conversion of employee property used in the course of employment; (7) defamation of employees; (8) failure to provide personal protective equipment to employees; and (9) refusal of quarantine pay to employees.  (*See* Doc. 29, p. 13–14).

Every single one of these alleged causes of damages is a personnel practice, act, or omission, as they all relate directly to Underlying Plaintiffs' employment with Krucial.  *See LDF*, 146 P.3d at 1095 (applying personnel-acts exclusion to isolated strip search of an employee and explaining a personnel act or omission is identical to an employment-related act or omission); *see also Capitol Indem. Corp. v. 1405 Assocs., Inc.*, 340 F.3d 547, 550 (8th Cir. 2003) (holding employment-acts exclusion barred coverage where claims "all flow directly from [plaintiff's] employment"); *Old Republic Ins. Co. v. Comprehensive Health Care Assocs., Inc.*, 2 F.3d 105, 109 (5th Cir. 1993) (explaining employment-acts exclusion "broadly covers virtually any claim arising out of the employment relationship").  Krucial offers no argument to the contrary, as it tellingly avoids any discussion of the ***causes*** of damages alleged.  Because Underlying Plaintiffs'

---

Court of Appeals held there was no coverage under a workers compensation/employers liability policy for two separate reasons: (1) there was no bodily injury alleged by the employee; ***and*** (2) the personnel-acts exclusion applied to the employer's strip search of the employee.  *Id.*  These two reasons for non-coverage were independent of each other— the lack of bodily injury, which concerned the alleged damages, had no bearing on whether the personnel-acts exclusion applied, which concerned the alleged cause.  *Id.*  Put another way, ***even assuming*** there was bodily injury alleged, *LDF* held the personnel-acts exclusion would nevertheless exclude coverage for any damages because the alleged cause of damages (the strip search) fell under the exclusion.  *Id.*

alleged causes of damages are all personnel practices, acts, or omissions, the personnel-acts exclusion also independently bars coverage under the NLF Policy's employers liability insurance.

### 3. Section B's grant of coverage cannot be rewritten to include claims not expressly covered.

Section B ("We Will Pay") of the NLF Policy's employers liability insurance expressly states that Krucial will pay on four categories of claims based on bodily injury to employees: (1) claims brought by third parties to recover damages claimed against the third parties; (2) derivative claims brought by third parties for care and loss of services; (3) claims brought by family members for consequential injury; and (4) claims brought by employees against their employer in a capacity other than employer.[4]  (Doc. 29, p. 3; 29-1, p. 33–34).  Krucial attempts to paint Section B as some kind of exclusionary provision that fails to expressly exclude bodily claims brought by injured employees against their employer.  To the contrary, Section B is a ***grant*** of coverage, not an exclusion.  *See Greystone Constr., Inc. v. Nat'l Fire & Marine Ins. Co.*, No. 09-1412, 2010 WL 5776109, *2 (10th Cir. 2010) (noting a "we will pay" section is a "coverage grant").  Thus, Krucial has the burden to show Underlying Plaintiffs' claims are included in Section B's grant of coverage; it is not NLF's burden to show such claims are excluded.  *See Schlup v. Depositors Ins. Co.*, 426 F. Supp. 3d 831, 834 (D. Kan. 2019).

Krucial cannot carry this burden.  Section B expressly grants coverage for bodily injury claims brought by injured employees themselves—but only when brought against the employer in a capacity other than as employer.  (Doc. 29, p. 3; Doc. 29-1, p. 33–34).  Section B says nothing about claims brought by injured employees against their employer in its capacity as their employer, the only claims potentially at issue in the Underlying Suit.  (*Id.*).  This Court cannot add language

---

[4]  Section D ("We Will Defend") of the NLF Policy's employers liability insurance ties NLF's duty to defend back to its duty to pay under Section B ("We Will Pay"), stating: "We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages ***payable by this insurance***."  (Doc. 29-1, p. 34) (emphasis added).

to grant coverage that does not otherwise exist under the plain, written terms of the NLF Policy. *Hall v. Shelter Mut. Ins. Co.*, 253 P.3d 377, 382 (Kan. App. 2011). "Insurance is written to cover a variety of risks and combination of risks and premiums are calculated according to the risk." *Bennett v. The Preferred Accident Ins. Co. of N.Y.*, 192 F.2d 748, 750–51 (10th Cir. 1951). Parties are "at liberty to contract for insurance to cover such risks as they saw fit and [are] bound by the terms of the contract, and courts may not rewrite the contract." *Id.* at 751.

As evident by the plain terms of Section B, Krucial contracted to cover the risk of bodily injury claims brought by injured employees, but only when such claims are brought against Krucial in its capacity other than employer. *See In re Asbestos Prods. Liab. Litig.*, No. Civ.A. 96-968, 1997 WL 539916, at *6 (E.D. La. Sept. 2, 1997). In *Asbestos*, the Court considered an employers liability policy that contained a Section B ("We Will Pay") identical to the Section B contained in the NLF Policy. *Id.* at *3. The Court first explained that, in order for there to be coverage under Section B, the claims of the plaintiffs in the underlying case against the employer, Buisson Realty, had to fall into one of the four listed categories of claims. *Id.* The Court ruled out the first three categories because the plaintiffs were all alleged employees, not third parties bringing any of the types of claims contemplated by the first three categories. *Id.* That left only the fourth category: claims by employees against the employer where the employer is sued in a capacity other than as employer. *Id.* The Court then determined the employee-plaintiffs did not assert such claims against Buisson Realty and concluded:

> Having determined that plaintiffs do not allege that they are entitled to recover against Buisson Realty in Buisson's capacity other than as employer, the court finds as a matter of law that the [employers liability] policy does not cover Buisson Realty for the claims alleged in Plaintiffs' complaint. Since no coverage is triggered under Part II, subpart B, entitled "We Will Pay," the court need not reach the issue of whether coverage [is excluded].

*Id.* at *6.  Notably, the Court rejected Buisson Realty's argument that the insurer "had a duty to defend all actions brought against Buisson Realty in its capacity as employer," *i.e.*, the same argument Krucial makes here.  *Id.* at *6 n.5.

Like *Asbestos*, Underlying Plaintiffs' claims cannot possibly fall into any of the first three categories of Section B because Underlying Plaintiffs are all alleged employees.[5]  *See id.* at *3; (Doc. 29-2, ¶¶ 1–41).  Like *Asbestos*, that leaves only the fourth category: claims by employees against the employer where the employer is sued in a capacity other than as employer.  *See* 1997 WL 539916, at *3.  As discussed in NLF's opening Memorandum, Underlying Plaintiffs do not allege any claim against Krucial in its capacity other than as employer.  (Doc. 29, p. 16–17). Krucial does not argue otherwise.  Accordingly, like *Asbestos*, there is no coverage for Underlying Plaintiffs' claims because they do not fall into any of the four categories listed in Section B's grant of coverage.  *See* 1997 WL 539916, at *6.  This is yet another independent reason the NLF Policy's employers liability insurance does not provide coverage for the Underlying Suit.

### 4. Part Three's grant of coverage cannot be rewritten to include Krucial's work in New York.

NLF and Krucial agree that Part Three of the NLF Policy extends employers liability insurance coverage to Krucial's work in New York only if Krucial were not separately insured for such work.  Krucial, however, argues this means there is coverage if Krucial did not have other employers liability insurance that ***specifically insured for bodily injury damages*** for its work in

---

[5]  Although Krucial suggests the Underlying Suit also includes a claim for consequential bodily injury to the daughter of Underlying Plaintiff Aimée Branch, Krucial's contention is pure fiction.  Branch's daughter is not a named Underlying Plaintiff, nor is Aimée Branch (or anyone else) named in some capacity to bring claims on behalf of Branch's minor daughter.  (Doc. 29-2, p. 2).  Further, the only references to Branch's daughter in the Second Amended Complaint concern ***Aimée Branch suffering damages*** from her daughter's alleged COVID-19 infection, in the form of emotional distress.  (*Id.* at ¶¶ 10, 320).  Simply put, a claim by Branch's daughter is yet another hypothetical claim that Underlying Plaintiffs are not actually pursuing and that has no bearing on NLF's duty to defend.  *See Collective Brands*, 2013 WL 66071, at *16.

New York.  But that is not what Part Three says.  Part Three of the NLF Policy's employers liability insurance provides in relevant part:

A.  **How This Insurance Applies**
1.  This other states insurance applies only if one or more states are shown in Item 3.C. of the Information Page.
2.  If you begin work in any one of those states after the effective date of this policy and are not insured or are not self-insured for such work, all provisions of the policy will apply as though that state were listed in Item 3.A. of the Information Page.

(Doc. 29-1, p. 35).  This is another grant of coverage, not an exclusion.  *See Acuity v. Kessor Enters., Ltd.*, No. 16-cv-3683, 2017 WL 3620743, at *7 (N.D. Ill. Aug. 23, 2017).  As such, Krucial bears the burden of showing Part Three grants coverage for Krucial's work in New York.  *See id.*; *Schlup*, 426 F. Supp. 3d at 834.

Krucial cannot carry its burden.  By its plain terms, Part Three's extension of coverage turns on whether Krucial was, generally, "insured . . . for such work" in New York, not whether Krucial was insured specifically for bodily injury damages for its work in New York.  (Doc. 29-1, p. 35).  There is no mention of bodily injury anywhere in Part Three.  (*Id.*).  Again, this Court cannot rewrite the NLF Policy and add language to grant coverage that does not otherwise exist under its plain, written terms.  *Hall*, 253 P.3d at 382; *Bennett*, 192 F.2d at 750–51.

Krucial was indeed insured for its work in New York with an insurance policy issued by Federal Insurance Company (the "Federal Policy"), which provides coverage for Krucial's liability to employees "anywhere in the world."  (Doc. 29, p. 12–13, Doc. 29-4, p. 16, 48).  Krucial even filed its own separate lawsuit that argues the Federal Policy provides coverage for the Underlying Suit.  (Doc. 29, p. 12, Doc. 29-3, ¶¶ 23–40).  Whether the Federal Policy specifically excludes bodily injury damages, as Krucial now contends in this case, is irrelevant.  The dispositive question

14

for Part Three, based on its plain language, is simply whether Krucial had separate insurance for its work in New York.  *See Acuity*, 2017 WL 3620743, at *7.  Krucial plainly did, regardless of whether the Federal Policy excludes certain claims.  *See id.*  For this reason—in addition to and independent of the intentional-injury exclusion, personnel-acts exclusion, and Section B's limited grant of coverage—there is no coverage for the Underlying Suit under the NLF Policy's employers liability insurance.

### D.  Krucial's Rule 56(d) Request is Non-Compliant and Meritless.

Finally, Krucial asks this Court to defer its decision on NLF's Motion for Summary Judgment to allow Krucial to conduct discovery under Federal Rule of Civil Procedure 56(d).  Rule 56(d) provides that a court may allow time for a nonmovant on a motion for summary judgment to conduct discovery "[i]f a nonmovant ***shows by affidavit or declaration*** that, for specified reasons, it cannot present facts essential to justify its opposition."  (emphasis added).  Krucial does not provide any affidavit or declaration in support of its Rule 56(d) request.  Without an affidavit or declaration, there is no basis for granting Krucial's request—after all, a court "may not look beyond the affidavit [or declaration] in considering a Rule 56(d) request."  *Cerveny v. Aventis, Inc.*, 855 F.3d 1091, 1110 (10th Cir. 2017).  Krucial's request should be denied for this reason alone.  *See Milam v. Pafford EMS*, 729 Fed. App'x 632, 636 (10th Cir. 2018) (holding Rule 56(d) request was "properly rejected" because requesting party did not file the required affidavit).

Moreover, Krucial's asserted reasons cannot justify deferring a decision for discovery under Rule 56(d).  Krucial first suggests it needs time to conduct discovery in the Underlying Suit to clarify whether covered claims might be raised.  This Court has previously rejected an identical argument.  *See Phila. Indem. Ins. Co. v. Kan. City Home Care, Inc.*, 139 F. Supp. 2d 1194, 1200–01 (D. Kan. 2001) (rejecting Rule 56(d) request that argued "discovery remains open in the

underlying litigation and it is still possible that the complaint in the underlying litigation will be amended to include claims that are covered under the insurance contract").  There is no reason to believe that additional discovery in the Underlying Suit will cause Underlying Plaintiffs to change their minds and bring hypothetical covered claims that, as discussed above, they are deliberately eschewing in order to avoid the workers compensation law.  *See id.*  Krucial has also had ample time already to conduct discovery in the Underlying Suit, which was filed fifteen months ago.  *See id.*  Rule 56(d) "does not permit a continuance if the parties have had a reasonable opportunity to conduct discovery."  *Id.*

Krucial also suggests it needs time to conduct discovery into extrinsic evidence, such as underwriting materials, to aid in the interpretation of the NLF Policy.  Such extrinsic evidence is irrelevant under Kansas law.  Krucial does not identify any ambiguity in the NLF Policy.  Absent an ambiguity, extrinsic evidence cannot be considered when interpreting an insurance policy and thus has no bearing on NLF's Motion for Summary Judgment.  *See Federated Mut. Ins. Co. v. Botkin Grain Co.*, 64 F.3d 537, 541 (10th Cir. 1995); *Coleman Co., Inc. v. Cal. Union Ins. Co.*, 960 F.2d 1529, 1536 (10th Cir. 1992) ("Kansas has clearly developed rules for interpreting insurance policies; these rules do not include consideration of extrinsic evidence."); *Briggs v. State Farm Mut. Auto. Ins. Co.*, No. 20-1172-SAC-GEB, 2021 WL 1056429, at *5 (D. Kan. Mar. 18, 2021) ("Because we find no ambiguity, following Kansas law the court refers only to the language of the policy and not to extrinsic evidence such as the contents of an underwriting file.").

## V.    CONCLUSION

For the foregoing reasons, NLF respectfully requests this Court grant its Motion for Summary Judgment on its Count I and enter judgment declaring that NLF does not have a duty to

defend or indemnify Krucial or Cleary under the NLF Policy with respect to the claims in the Underlying Suit.

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By: */s/ Douglas S. Beck*
    Douglas S. Beck, #70743
    W. Clark Richardson, #27740
    2555 Grand Boulevard
    Kansas City, Missouri  64108-2613
    Telephone:  816-474-6550
    Facsimile:  816-421-5547
    dbeck@shb.com
    wrichardson@shb.com

    *Attorneys for Plaintiff/Counter-Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2021, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

*/s/ Douglas S. Beck*
*Attorneys for Plaintiff/Counter-Defendant*