**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| NATIONAL LIABILITY & FIRE INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Civil Action No. 20-cv-2598-KHV-GEB ) ) |
| KRUCIAL STAFFING, LLC and BRIAN MICHAEL CLEARY V, | ) ) ) ) |
| Defendants. | ) ) |
| KRUCIAL STAFFING, LLC, | ) ) |
| Counter-Plaintiff, | ) ) |
| v. | ) ) ) |
| NATIONAL LIABILITY & FIRE INSURANCE COMPANY, | ) ) ) ) |
| Counter-Defendant. | ) ) |

**KRUCIAL STAFFING, LLC'S REPLY MEMORANDUM IN SUPPORT OF ITS CROSS MOTION FOR SUMMARY JUDGMENT ON DUTY TO DEFEND (DOC. 36)**

In further support of its Motion for Summary Judgment on the Duty to Defend (Doc. 36),

Defendant/Counter-Plaintiff Krucial Staffing, LLC ("Krucial"), pursuant to Local Rules 56.1(c)

and 6.1(d)(2), submits this Reply:

**I.      Response to Statement of Additional Material Facts by National Liability & Fire Insurance Company ("NLF") (Doc. 42).**

38.      Uncontroverted.

39.      Uncontroverted.

40.      Uncontroverted.

41.      Controverted in that Krucial's work does not have to be in Kansas or Texas.  Part

Three of the Policy, "Other States Insurance," extends coverage to other states if Krucial begins

work in the other state after the policy effective date and it is not insured or self-insured for such work.  *See* NLF Policy, Doc. 29-1, pp. 3 (Information Page), 35 (Part III).

42.     Uncontroverted.

43.     Uncontroverted.

44.     Uncontroverted, but the Policy elsewhere describes "How this Insurance Applies" and states, "This employers liability insurance applies to bodily injury by accident or bodily injury by disease" that (1) arises out of employment that is (2) necessary or incidental to Krucial's work (3) in a covered state (4) when the accident or last date of exposure to the aggravating conditions of employment occurs during the policy period; and (5) when suit is brought in the USA or Canada. Doc. 29-1, p. 33.  And, when covered, the Policy states, "We will pay all sums that you legally must pay as damages because of bodily injury to your employees … ."  *Id.*

45.     Uncontroverted.

46.     Uncontroverted.

47.     Controverted in that the allegation is an argumentative interpretation of the Policy terms, which speak for themselves.

48.     Uncontroverted.

49.     Uncontroverted.

50.     Controverted in that the allegation is an argumentative interpretation of the Policy terms, which speak for themselves.

51.     Uncontroverted.

52.     Uncontroverted.

53.     Controverted to the extent the First Cause of Action incorporates by reference all previous allegations, which include allegations of bodily injury, and it is at least ambiguous

whether the plaintiffs seek bodily injury damages for alleged failure to provide adequate protection against COVID-19 as an alleged term and condition of employment.  Doc. 29-2, pp. 46-47, ¶¶ 259-264.

54.    Uncontroverted.

55.    Controverted to the extent the Second Cause of Action incorporates by reference all previous allegations, which include allegations of bodily injury, and it is at least ambiguous whether the plaintiffs seek bodily injury damages for alleged failure to provide adequate protection against COVID-19 as an alleged term and condition of employment.  Doc. 29-2, p. 47, ¶¶ 265-268.

56.    Uncontroverted.

57.    Uncontroverted.

58.    Uncontroverted.

59.    Uncontroverted.

60.    Uncontroverted.

61.    Controverted to the extent that the Fifth Cause of Action alleges plaintiffs were misled about PPE availability; alleges Krucial failed to test for COVID-19; and alleges that Krucial failed to follow workers compensation guidelines causing "additional damages" beyond financial contract damages.  Doc. 29-2, pp. 49-50, ¶¶ 295, 303-304.  The Fifth Cause of Action incorporates by reference all previous allegations in the complaint, which include allegations of bodily injury. *See, e.g.*, *Id.*, p. 5, ¶ 10, p. 9, ¶ 34; pp. 35-36, ¶¶ 179-182.

62.    Uncontroverted.

63.    Uncontroverted.

64.    Uncontroverted.

65.     Uncontroverted.

66.     Controverted.  Count Eight does not specifically allege that Krucial intended to cause injury, nor does Count Eight specifically allege that Krucial knew injury was substantially certain to result.  Plaintiffs allege, in part, that they were front-line health care workers during the height of the pandemic in the spring of 2020 and that they were at enhanced risk for contracting COVID-19 because Krucial had "lax standards," and that it failed to follow "standard of care" to prevent infection.  Doc. 29-2, p. 9, ¶ 34; p. 17, ¶¶ 76-77.  They also allege they worked in rooms that allowed spreading of COVID-19.  *Id.* at p. 21, ¶¶ 80-81. They allege Krucial was "negligent." *See,* Pinlac Deposition, Doc. 35-3, p. 107, ll. 13-14.  And, they allege they do not have to show Krucial intended injury because it allegedly failed to maintain proper workers compensation insurance.  Doc. 29-2, p. 52, ¶¶ 321-325.  Further, plaintiffs also allege consequential bodily injury to Branch's daughter who allegedly caught COVID-19 from Branch after she returned home from New York.  *Id.* p. 5, ¶ 10.  Branch testified that her daughter was symptomatic, required medical treatment and that she continues to have COVID-19 related anxiety requiring ongoing psychiatric treatment.  *See* Branch Deposition, Doc. 35-4, p. 87, l. 12 – p. 88, l. 7; p. 120, ll. 7-15; p. 121, ll. 5-24.

67.     Uncontroverted, but immaterial for the reasons stated in response to Paragraph 66.

68.     Controverted in that it is not clear whether plaintiffs seek workers compensation benefits.  Torres testified that she "fought" for workers compensation benefits and did not know if they had been paid.  *See* Torres Deposition, Doc. 35-5, p. 114, ll. 9, 15-19; p. 115, ll. 3-20; Plaintiffs' Interrogatory Response, Doc. 35-6, p. 8, ¶ 6.

69.     Uncontroverted, but immaterial for the reasons stated in response to Paragraph 66.

70.     Uncontroverted, but immaterial for the reasons stated in response to Paragraph 66. Also, there is a distinction between intending an act and intending to cause injury.

71.     Uncontroverted.

72.     Uncontroverted.

73.     Uncontroverted, although at least one plaintiff has potentially put at issue her claim for workers compensation benefits.  *See* Torres Deposition, Doc. 35-5, p. 114, ll. 9, 15-19; p. 115, ll. 3-20; Plaintiffs' Interrogatory Response, Doc. 35-6, p. 8, ¶ 6.

74.     Uncontroverted.

75.     Uncontroverted but immaterial.  The policy states that it covers damages for "bodily injury to your employees" and "consequential bodily injury to a spouse, child, parent, brother or sister of the injured employee; provided that these damages are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by you; … "  Doc. 29-1, pp. 34-35.  The policy does not specify who the named plaintiff must be.

76.     Controverted.  The alleged damages are broad enough to include the alleged pain and suffering and treatment expenses for Branch's daughter.  *See* Interrogatory Responses, Doc. 35-6, p. 17, ¶¶ 7-8 (generically claiming damages and reserving right to add to damages as medical expenses come forward); Initial Disclosures, Doc. 35-7, p. 3 (supporting documents include "medical records for those who were diagnosed with COVID or deemed to be probable because of a lack of testing availability" and computed damages include "compensatory damages for emotional distress and pain and suffering other intangible losses which cannot be 'computed'").

77.     Uncontroverted, and NLF's coverage is specifically for Krucial's employer liability.

78.   Controverted in that the Employment Practices Liability Coverage does not cover Krucial's workers compensations obligations or its employer liability for employee bodily injury by accident or disease.  *See* Federal Insurance Company ("Federal") Policy, Doc. 29-4, p. 54 (Exclusions D and E).  *See also* Cleary Declaration, Doc. 35-2, ¶¶ 7-8.

79.   Uncontroverted.

80.   Uncontroverted, but not based on allegations of liability for workers compensation obligations or employer liability for employee bodily injury by accident or disease.

81.   Uncontroverted.

82.   Uncontroverted.

## II.   NLF breached its duty to defend Krucial in the Underlying Suit.

The Underlying Suit was brought by nurses hired by Krucial to provide emergency relief in New York during the height of the COVID-19 pandemic. While there, some of them allegedly contracted COVID-19 and became sick.  In one case, a nurse allegedly passed COVID-19 on to her daughter who also became sick.  The plaintiffs seek compensatory damages for their alleged pain and suffering and related medical expenses.  At a minimum, the allegations in the Underlying Suit trigger NLF's duty to defend claims for potential liability for covered employee "bodily injury by disease" or "bodily injury by accident."  *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, PA.*, 314 F. Supp. 2d 1094, 1101 (D. Kan. 2004), *aff'd* 442 F.3d 1239 (10th Cir. 2006) (the policyholder's only burden is to show that the underlying complaint gives rise to a potential covered liability).

But, NLF has refused to defend on numerous, untenable grounds, relying heavily on various policy exclusions or alleged policy limitations, for which it bears the burden of proof.  *Id.* NLF has not, and cannot, meet its burden.  The Court should grant summary judgment to Krucial

on the duty-to-defend issue and award to Krucial its defense fees and costs in the Underlying Suit, as well as its fees and costs in successfully defending this declaratory judgment action.

### A. NLF cannot meet its burden of proving the intended-injury exclusion eliminates all potential for coverage.

NLF first relies on the Policy's intentional-injury exclusion to try to avoid its duty to defend under its Employer Liability Insurance, which excludes "[b]odily injury intentionally caused or aggravated by [Krucial]." Under Kansas law, it is undisputed that NLF has the burden to prove the exclusion to coverage unambiguously applies to all allegations in the Underlying Suit. *Id.*; *Guardian Tr. Co. v. Am. States Ins. Co.*, No. 95-4073-SAC, 1996 WL 509638, at *7 (D. Kan. July 30, 1996). And, in construing an intentional injury exclusion, specifically, it is NLF's burden to show that the complained injury was necessarily intended or substantially certain to occur as a result of the insured's intentional misconduct. *Thomas v. Benchmark Ins. Co.*, 179 P.3d 421, 431-32 (Kan. 2008).

Here, first and foremost, NLF cannot meet this burden because there is no allegation in the Underlying Suit that Krucial intended to inflict COVID on the plaintiff nurses. Nor has NLF made any argument or offered any evidence that COVID infection was substantially certain to occur as a result of Krucial's actions. To the contrary, the fact that less than a handful of plaintiff nurses (which were among thousands of nurses dispatched by Krucial to New York[1]) allege COVID injuries is evidence, in and of itself, that contracting COVID, even if proven true, was the exception rather than the rule. For this reason alone, the exclusion is inapplicable.

---

[1] *See* Declaration of Brian Cleary in Support of Defendants' Motion to Sever Claims filed in Underlying Suit, Case No. 1:20-cv-02859 pending in the Southern District of New York, ECF No. 42 at ¶ 2 ("Krucial, to date, has deployed approximately 4,000 medical professionals from around the country to assist New York hospitals respond to the COVID-19 crisis.").

Moreover, the plaintiff nurses generally allege that, while they were working in New York in the spring of 2020, they were exposed to COVID-19.  That alone is an allegation that would potentially trigger coverage for employee "bodily injury by disease" because they are front-line workers that, by the very nature of the occupation, had inherent exposure to the airborne virus. Such occupational exposure to allegedly dangerous work conditions creates potential liability without regard to whether Krucial intended any injury.

The plaintiffs also allege, in part, that they were at enhanced risk for catching COVID-19 because Krucial had "lax standards," was "negligent," and it failed to provide adequate PPE.  They allege, for example, they were placed in patient rooms that allowed enhanced spread of COVID-19.  *See, e.g.*, ¶ 66, *supra*.  These allegations sound in negligence – a failure to meet a standard of care – and they further potentially give rise to potential liability based on "bodily injury by accident" which means NLF cannot possibly meet its burden of proving all allegations are for intentionally-caused injury.  *See generally Reynolds v. Kansas Dept. of Transp.*, 43 P.3d 799, 803 (Kan. 2002) (negligence requires the existence of a duty, breach of the duty, and resulting injury).

In trying to meet its burden of proof, NLF relies on the fact that the plaintiffs brought a claim for intentional tort.  But, the claim does not control coverage; the underlying allegations do. *Hartford Fire Ins. Co. v. Vita Craft*, 911 F. Supp. 2d 1164, 1177 (D. Kan. 2012) ("under Kansas law, the label which the pleader places on the conduct alleged does not determine the issue of coverage or the duty to defend.") (citing, in part, *United Wats, Inc. v. Cincinnati Ins. Co.*, 971 F. Supp. 1375, 1384 (D. Kan. 1997) (insurer obligated to defend potential claims of tortious interference that would be supported by underlying allegations even though the complaint did not specifically assert such theory of liability)).  And, here, at least some of the alleged allegations fall outside the scope of intentionally-caused injury, which requires NLF to defend.

This case is thus distinguishable from NLF's cited authority, such as *Collective Brands, Inc. v. National Union Fire Insurance Co. of Pittsburgh, P.A.*, No. 11-4097-JTM, 2013 WL 66071, at *14 (D. Kan. Jan. 4, 2013). *Collective Brands* was a case involving the insured's alleged liability for TCPA violations, which did not trigger the insurer's duty to defend because of a TCPA exclusion in the policy. In that case, the insured argued that the underlying plaintiffs might have advanced claims for common law privacy invasion, but the court disagreed this "hypothetical" claim supported a duty to defend. Significantly, the court noted, the plaintiffs had not alleged the "different – and more egregious – underlying conduct" that would be necessary to support a separate privacy invasion claim. *Id.* at *15. But, unlike *Collective Brands*, Krucial is not relying on un-asserted allegations. Instead, Krucial is relying on the absence of any allegations that Krucial intended to infect the plaintiff nurses with COVID, as well as the specific allegations of occupational exposure and negligence that have already been made in the Underlying Suit, whether in the pleadings or the sworn deposition testimony, which all must be considered. *Spivey v. Safeco Ins. Co.*, 865 P.2d 182, 188 (Kan. 1993) (insurer must consider facts and information beyond the pleading); *Miller v. Westport Ins. Corp.*, 200 P.3d 419, 424 (Kan. 2009) ("the universe of information" from which duty to defend must be ascertained "is much greater" than the eight corners of a pleading and insurance policy); *Vita Craft Corp.*, 911 F. Supp. 2d at 1173-74 (defense was accepted based on deposition testimony from underlying suit). NLF's duty to defend is triggered: No guess work or speculation is needed. *See generally Collective Brands*, 2013 WL 66071 at *14 ("… the existence of an intentional act exclusion does not preclude a duty to defend if the insurer learns of a facts [sic] suggesting a non-intentional injury.").

What is more, NLF wrongly argues that this is a case where Krucial faces no potential liability for negligence because of its workers compensation immunity. The plaintiffs have

specifically put into dispute whether Krucial has workers compensation immunity in the first place, and they alternatively plead that they do not have to prove any intentional wrongdoing to recover from Krucial.  Thus, while Krucial contends that it does have workers compensation immunity and that it should be able to successfully defend the claims on that basis, the fact that it should have a meritorious defense does not negate the fact that there are existing allegations of occupational exposure and negligence that NLF needs to defend until those claims are dismissed or otherwise resolved.  *See generally Spivey*, 865 P.2d at 188 (duty to defend no matter how remote the potential liability may be); *Park Univ. Enters., Inc.*, 314 F. Supp. 2d at 1101 (citing *Am. Motorists Ins. Co. v. Gen. Host Corp.*, 946 F.2d 1489, 1490 (10th Cir.1991)) ("So long as the insured can show a non-frivolous possibility that the claim against it may fall within the coverage of the insurance contract, the insurer has a duty to defend the insured.").

This case is also unlike the other cases cited by NLF (Doc. 42, pp. 14-17) that involved homeowner or general liability policies that covered bodily injury caused by an "accident" that was neither "expected" nor "intended" by the insured.  In three of the cases, the underlying plaintiffs alleged the insured had sexually molested or sexually harassed them – affirmative acts that, by their very nature, are inherently and necessarily intentional, no matter how the plaintiff pleaded the claims.  *Spivey*, 865 P.2d at 186-188 (no duty to defend where the plaintiff alleged the insured intentionally threatened her with a knife and gun, shot at her and forced sexual acts upon her); *State Farm Ins. Co. v. Gerrity*, 968 P. 2d 270, 272 (Kan. Ct. App. 1998) ("Gerrity's act of sexually molesting R.W., while he was asleep, cannot be deemed an "accident."); *Quality Painting, Inc. v. Truck Ins. Exch.*, 988 P.2d 749, 754 (Kan. Ct. App. 1999) ("We are dealing with a case in which the acts of sexual harassment alleged are, by their very nature, intentional and wrongful; … ").

Likewise, in *Notwen Corp. v. American Economy Insurance Co.*, 206 Fed. App'x 811 (10th Cir. 2006), a case decided under Wyoming law, the court found no duty to defend under an "accident" based occurrence liability policy where the insured's alleged misconduct included "intent-driven claims" of misappropriation of trade secrets, intentional interference with contract and economic relations. *Id.* at 814. There, the court specifically observed that the underlying suit had no allegations that could be construed as alleging liability for anything less than intended harm. *Id*.

Those cases have little bearing on this coverage dispute. For starters, NLF's policy is an employer liability policy that does not require an "accident" to trigger coverage. It separately covers claims for occupational "bodily injury by disease" when bodily injury is caused by the employee's exposure to aggravating conditions in the workplace. Thus, cases that analyzed duty to defend under "accident" based coverage are categorically distinguishable. Also, on the underlying facts, this case is distinguishable. This case simply does not compare to the alleged intentional misconduct in the other cases. Whereas those plaintiffs complained of violently offensive instances of sexual molestation and assault – acts that by their very nature had to have been intentional –here, the nurses complain they became sick with COVID-19 because, in part, Krucial failed to meet an alleged standard of care in terms of providing allegedly adequate PPE or other safety measures.

None of NLF's cited cases persuasively apply to the distinguishable facts and policy at issue here. The Court should hold NLF accountable for Krucial's defense given the mixed nature of the underlying allegations against Krucial.

**B. NLF cannot meet its burden of proving the personnel acts exclusion eliminates all potential for coverage.**

Likewise, NLF cannot show there is no potential for coverage due to the policy exclusion for personnel acts. NLF argues that damages for bodily injury by disease are excluded when they arise out of the excluded causes of "coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions." (Doc. 42, p. 17). But, here, the damages for bodily injury by disease do not arise out of those excluded causes. Rather, the alleged bodily injury by disease damages arise out of nurse's alleged exposure to the COVID-19 virus while working in the frontlines of a worldwide pandemic. That airborne exposure, inherent to the very nature of the healthcare services they were providing, has nothing to do with "personnel practices."

Yet, NLF argues that the personnel practice exclusion must apply because the damages "relate directly to Underlying Plaintiffs' employment with Krucial." (Doc. 42, p. 18). That surely cannot be the threshold for the exclusion's applicability: *Every* claim under an employer liability policy will (and should) relate directly to the underlying plaintiff's employment with the employer. NLF's broad interpretation makes no sense and it runs afoul of Kansas's rule that exclusions must be construed narrowly. *Vita Craft*, 911 F. Supp. 2d at 1180-81.

To make this argument, NLF mistakenly compares the personnel exclusion in this employer liability to employee-related exclusions in commercial general liability policies (Doc. 42, p. 18). Commercial general liability ("CGL") policies are designed to protect businesses from outward liability to third parties. CGL policies generally do not cover the business's inward liability to its own employees. Thus, unsurprisingly, courts have enforced employee-related

practices exclusions in CGL policies to broadly bar coverage for employee claims against the employer for conduct arising out of the employment relationship.

But, here, NLF issued a policy specifically designed to cover employee bodily injury by disease or accident that arises out of the scope of and during employment.  Thus, every claim is going to directly relate to employment.  But, that does not mean every claim should be deemed an excluded "personnel practice."

While there are some allegations and claims in the Underlying Suit that do concern alleged personnel practices, they are distinct from the allegations of harmful exposure to an airborne virus while providing health services during a pandemic.  Those are the allegations that underlie the plaintiffs' claims for bodily injury by accident or bodily injury by disease.  They have nothing to do with excluded "personnel practices" simply because they relate to the plaintiff's employment.

**C.  NLF cannot show any Policy language that excludes coverage for employee claims against Krucial in its capacity as employer.**

NLF continues to argue its policy does not cover employee suits against an employer in its capacity as employer.  The argument is baffling when the insurance is, by its very name, "*employer liability* insurance."  *See generally Everest Indem. Ins. Co. v. Jake's Fireworks, Inc.*, 501 F. Supp.3d 1158, 1187 (D. Kan. 2020) (worker's compensation insurance and employers' liability insurance "exist to provide employers with coverage for injuries that occur to employees during the scope of employment").

The policy plainly explains "How This Insurance Applies" in Part Two, § A.  There, it states, "This employers liability insurance applies to bodily injury by accident or bodily injury by disease" and then it identifies five conditions for coverage: (1) the bodily injury must  arise out of and in the course of the employment (2) the employment must be necessary or incidental to Krucial's work (3) the work must be in a covered state (4) the employee's last date of exposure to

the aggravating work conditions must occur during the policy period or an injury by accident must occur during the policy period; and (5) suit must be brought in the USA or Canada.  Then, in Part Two, § B, the Policy continues to state, "We will pay all sums that you legally must pay as damages because of bodily injury to your employees, provided the bodily insurance is covered by this Employers Liability Insurance."  This is a clear, broad grant of coverage.  It binds NLF to pay "all sums" that Krucial must pay for employee's covered bodily injury by accident or disease.

Section B then continues, "The damages we will pay, when recovery is permitted by law, include damages: …"  and then the Policy proceeds to list four types of damages – damages for third-party liability; for care and loss of services; for consequential bodily injury to close family members; and for employer liability claimed in a capacity other than as employer.  This is the language that NLF focuses on, arguing that these are the *only* types of damages covered, even though the Policy does not say these are the *only* types of damages covered.  It is, thus, NLF, not Krucial, that is relying on omitted language to try to re-write the policy.

NLF is also mistaken when it argues that Krucial's position is that this language is "some kind of exclusionary provision …." (Doc. 42, p. 19).  Quite the opposite, Krucial's position is that this is a list of *expansion*.  When coverage conditions are met under Section A, NLF will pay "all sums" of Krucial's liability.   And, the Policy continues, those damages "include" (but, significantly, are not limited to) various types of damages that may be incurred in commonly-brought ancillary claims, such as liability to third parties, for consequential damage to close relatives, or when the employer is exposed to liability not only as employer but in a dual capacity, such as when it is a manufacturer of a defective product, for example.  But, again, the list is not exhaustive.  It is a list of "included" damages without saying they are the "only" damages.  The policy plainly states that "all sums" will be paid when coverage conditions are met.  *See Ruffin v.*

*RadioShack Corp.*, 305 P.3d 669, 675 (Kan. Ct. App. 2013) ("[T]he word 'include' is a word of enlargement and not limitation.  'Include' is used when it is desired to eliminate any doubt as to the inclusion in a larger class of the particular class specifically mentioned.") (citation and quotation omitted); *Moroni Feed Co. v. Mut. Serv. Cas. Ins. Co.*, 287 F.3d 1290, 1292-93 (10th Cir. 2002) (policy excluded "injury arising out of the employment practices of the insured, including wrongful dismissal of, or wrongful termination of, or discrimination against any officer or employee." The court held that "the use of the word 'including' simply gives examples" of excluded activities).

The irrationality of NLF's interpretation – that the policy only responds if an employee sues Krucial in a non-employer capacity – is further apparent if one considers who is an insured under the Policy.  Insured status is limited to the employer.  And, for cases involving partnerships, the partner is covered "*only in your capacity as an employer* of the partnership's employees."  NLF cited that very same language when it disclaimed coverage for Cleary.  (Doc. 29, p. 10).  But, now, it turns around and argues that Krucial cannot be covered as an insured because it is being sued in its capacity as an employer.  The inconsistency is baffling.

To support its interpretation, NLF relies on a single case, *In re Asbestos Products Liability Litigation* – an old, unreported decision under Louisiana law, which has not been followed by any other court for the proposition cited. No. Civ. A. 96-968, 1997 WL 539916 (E.D. La. Sept. 2, 1997).  That remote outlier is neither binding nor persuasive.  But, even if, *arguendo*, the Court were to follow *In re Asbestos*, the distinguishable facts of this case still lead to different outcome.

In *In re Asbestos*, the employees alleged work-exposure to asbestos, without further alleging "take home" exposure to family members.  *Id.* at *1.  Here, in contrast, one of the plaintiffs alleges that, not only did she contract COVID-19, but that, there was further "consequential bodily

injury to a … child … of the injured employee … [in] direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by you."  Doc. 29-1, p. 33-34, Section B, ¶ 3.  Plaintiff Aimee Branch has specifically pleaded that she contracted COVID-19 through work and then directly transmitted COVID-19 to her daughter, who became sick, required medical treatment and then continued to require ongoing psychiatric care for COVID-19 related anxiety.  NLF points out that Branch's daughter is not a named plaintiff and Branch did not specifically sue on her behalf.  But, the policy does not state that the daughter has to be a named plaintiff.  And, here, the plaintiffs' allegations and claimed damages are broad enough to encompass consequential damages incurred by Branch for the medical and psychiatric treatment of both her and her dependent daughter.  These allegations, if nothing more, trigger NLF's duty to defend, even under its incredibly narrow interpretation of its Policy provisions.

   **D. The Policy plainly covers Krucial's work in New York because Krucial did not carry any other workers compensation or employer liability insurance in that state.**

   Finally, NLF continues to erroneously argue, without citing any supporting authority, that Krucial's work in New York is not insured because Krucial maintained separate employment practices liability coverage.  While it is true that NLF and Federal should both be defending the Underlying Suit, they should be doing so for different reasons.  The Federal policy covers the various allegations of personnel practices while NLF's policy covers the various allegations of bodily injury by disease or accident.  The fact that both policies respond, given the mixed nature of the underlying claims in this instance, should not mean that NLF is bare for any workers compensation and employer liability coverage in the State of New York.

   The only logical and reasonable interpretation is that the "Other States" insurance applies so long as Krucial does not have other workers compensation and employer liability insurance in the other state.  Here, it undisputedly did not.  This policy thus covers Krucial's workers

compensation and employer liability for Krucial's work in New York. *See generally Park Univ. Enters., Inc.*, 314 F. Supp. 2d at 1101 (protecting insured's reasonable interpretation of policy language, and noting that "If the insurer claims that there is an exception under the policy, the insurer assumes the burden of proving that the case falls within the exception."); *Guardian Tr. Co.*, 1996 WL 509638, at *7 ("Courts generally give narrow constructions to exceptions, limitations or exclusions on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms. Indeed, a claim which is not clearly excluded from coverage under a general comprehensive liability insurance contract is presumed to have been included.") (citation and quotation omitted).

III.     **NLF is in breach of its duty to defend, and it owes Krucial its attorneys' fees in the Underlying Suit and in this declaratory judgment action.**

If the Court agrees that NLF has a duty to defend, then it follows that NLF is in breach of that duty. It is undisputed that NLF denied its duty to defend and forced NLF to litigate its right to defense in this declaratory judgment action. On these facts, Krucial is entitled to fees incurred in the Underlying Suit and in this declaratory judgment action.

First, NLF is liable for Krucial's fees in this coverage action under K.S.A. § 40-256. That statute awards fees to an insured when, as here, NLF's refusal to defend is without just cause or excuse. Because NLF did not provide a bona fide and reasonable factual ground for refusing to defend, nor allege a good-faith legal controversy, a fee award is proper under K.S.A. § 40-256. *Vaile v. Shelter Mut. Ins. Co.*, 456 P.3d 1015, at * 4 (Kan. Ct. App. Feb. 7, 2020); *Container Supply Co., A Div. of Hanlon Chem. Co., Inc. v. Fireman's Fund Ins. Co*., 715 F. Supp. 326, 328 (D. Kan.1989) ("without just cause or excuse" includes refusal to defend that lacks sufficient merit).

Second, even if the Court decides statutory fees are unwarranted, it must nonetheless award fees to Krucial under Kansas common law because NLF denied its duty to defend and then forced Krucial to litigate its rights in this declaratory judgment action.  For example, in *Missouri Medical Insurance Co. v. Wong*, 676 P.2d 113, 123 (Kan. 1984), the Court affirmed a fee award to the insured after the insurer had denied coverage and then filed an unsuccessful declaratory judgment action against the insured.  The *Wong* court broadly acknowledged:

> the rule is stated that where an insurance company denies coverage and the duty to defend under a homeowner's liability insurance policy and brings a declaratory judgment action against the insured to determine that issue, the insured is entitled to recover attorney fees and expenses incurred in defense of the declaratory judgment action if it is determined that there is coverage and a duty to defend.

*Id*. at 123.

Four years later in *Farm Bureau Mutual Insurance Co. v. Kurtenbach By and Through Kurtenbach*, 961 P.2d 53, 64 (Kan. 1998), the Kansas Supreme Court expanded the rule to cases where an insurer not only refuses to defend (as here), but, also, where the insurer agrees to defend under reservation of rights pending outcome of its declaratory judgment action.  The *Kurtenbach* court reasoned that, even if the insurer is defending the underlying case, principles of fairness still warrant fee shifting.  *Id*.  Quoting from the seminal case, *Upland Mutual Insurance, Inc. v. Noel*, 519 P.2d 737, 743 (Kan. 1974), the *Kurtenbach* court further emphasized:

> After all, the insurer had contracted to defend the insured, and it failed to do so. It guessed wrong as to its duty, and should be compelled to bear the consequences thereof. If the rule laid down by these courts should be followed by other authorities, it would actually amount to permitting the insurer to do by indirection that which it could not do directly. That is, the insured has a contract right to have actions against him defended by the insurer, at its expense. If the insurer can force him into a declaratory judgment proceeding and, even though it loses in such action, compel him to bear the expense of such litigation, the insured is actually no better

18

> off financially than if he had never had the contract right mentioned
> above....

*Id*. at 62.  The *Kurtenbach* court thus held:

> … we therefore hold that where an insurer denies coverage and the
> duty to defend and brings a declaratory judgment action against the
> insured to determine that issue, the insured may recover his or her
> attorney fees incurred in the defense of the declaratory judgment
> action if it is determined as a result of that action that there is
> coverage. …

*Kurtenbach*, 961 P.2d at 64.  *Kurtenbach* and *Wong* are binding precedent, and they support fee-shifting as a matter of right.

In response, NLF relies on *Citizens Insurance Co. of America v. Charity*, 871 F. Supp. 1401 (D. Kan. 1994), a case that is neither binding nor factually similar.  In *Charity*, the court examined coverage for an auto accident.  *Charity*, 866 F. Supp. 1314 (D. Kan. 1994); 871 F. Supp. 1401 (D. Kan. 1994).  The court's two opinions are silent as to whether any underlying suit had ever been filed against the insured and whether the policies at issue were "duty to defend" policies. *Charity*, 866 F. Supp. 1314 (D. Kan. 1994); 871 F. Supp. 1401 (D. Kan. 1994).  The underlying defense, if any, was not mentioned at all.  Because the *Charity* case only concerned questions of indemnity coverage, and not duty to defend, it did not have the same fairness concerns that drove the common-law right to fee shifting in *Upland*, *Kurtenbach*, and *Wong*.

The *Charity* court instead focused on whether the policies imposed a contractual obligation to pay the insured's costs in the declaratory judgment action.  *Charity*, 871 F. Supp. at 1402-03. The court found support for reimbursing such fees in a business auto policy that stated the insurer would pay, "In addition to the Limit of Insurance … All reasonable expenses incurred by the 'insured at our request … .'" *Id*. at 1404.  The court reasoned that the declaratory judgment was a "request" for the insured to incur expense. *Id*.  Conversely, the court found no contractual right to

19

fees where an umbrella policy stated it would reimburse fees incurred "to assist us in the investigation or defense of the claim or 'suit.'"  *Id.* at 1403.  The fees incurred in the declaratory judgment case (which only concerned duty to indemnify) were not incurred to assist in the investigation or defense of any underlying claim or suit (and no underlying suit was even mentioned).

Here, in contrast, Krucial contracted for duty-to-defend coverage and NLF breached its duty to defend.  It then forced Krucial to incur cost by litigating in this declaratory judgment action its right to a defense.  This case, therefore, raises the same fairness concerns that warrant fee-shifting as a matter of common law under *Upland*, *Kurtenbach*, and *Wong* – without regard to specific policy language.

But, even if viewed as a matter of contractual right, NLF's policy language also supports a fee award.  NFL's Policy provides indemnity coverage under § B, defense coverage under § D and additional allowed amounts under § E.  In § E, NLF agreed,

> We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding, or suit we defend:
>
> 1. reasonable expenses incurred at our request …

Doc. 29-2, p. 34.

This litigation is causing NLF to incur fees, and these fees are being incurred at NLF's "request."  This case is "part of" the covered defense in that Krucial cannot get a defense from NLF unless it litigates its coverage rights.  The same reasoning and logic was followed for the business auto policy in *Charity* as well as the policy at issue in *Upland*, which stated "With respect to such insurance as is afforded by this policy …, this Company shall pay, in addition to the applicable limits of liability:  … all reasonable expense … incurred by the insured at this

20

Company's request." *Upland Mut. Ins., Inc.*, 519 P.2d at 739.  Conversely, there is no language in this Policy that states the reasonable expenses incurred at NLF's request must be, specifically, "to assist us in the investigation or defense of the claim or 'suit.'"  Thus, the *Charity* ruling, upon which NLF relies, is distinguishable.

In short, Krucial's fee claim arises by statute and common law, and does not necessarily depend on policy language.  But, even to the extent the policy language is relevant, NLF's Policy supports a fee award.

**CONCLUSION**

For the foregoing reasons, Krucial asks the Court to grant summary judgment on duty to defend, declaring that NLF must defend Krucial in the Underlying Suit, which alleges liability for bodily injury by disease arising out of allegedly unsafe work conditions, and finding that NLF breached its duty to defend and must pay Krucial's defense costs in the Underlying Suit as well as its attorneys' fees and costs in this Coverage Action.

DATED this 26th day of July, 2021.

Respectfully submitted,

LATHROP GPM LLP

By: /s/ *Alexander T. Brown*
      Alexander T. Brown (Bar No. 78891)
      Noah H. Nash (*pro hac vice*)
      2345 Grand Boulevard, Ste. 2200
      Kansas City, MO 64108-2618
      Telephone: (816) 292-2000
      Telecopier: (816) 292-2001
      alexander.brown@lathropgpm.com
      noah.nash@lathropgpm.com

      ***Attorneys for Defendants Krucial Staffing,***
      ***LLC and Brian Michael Cleary V***

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed electronically with the United States District Court for the District of Kansas on the 26th day of July, 2021, with notice of the case activity generated and sent to counsel of record.

*/s/ Alexander T. Brown*